IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD W. WERTZ, III,** | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **DEBORAH RYAN, in her official capacity** | : | |
| as District Attorney of Chester County, | : | No. 21-2129 |
| Defendant. | : | |

**MEMORANDUM**

**Schiller, J.**                                                                                                                                               **January 12, 2022**

       Plaintiff Richard W. Wertz, III brings this action against Defendant Deborah Ryan, the District Attorney ("DA") of Chester County, Pennsylvania. He alleges multiple constitutional violations relating to the DA's office's handling of charges brought against Wertz in connection with his alleged trespass onto the property of his neighbors Christie and Douglas Mousaw in February 2020. Wertz maintains that the DA's office retaliated against him—and will do so again—after he exercised his First Amendment rights by filing a civil suit against the Mousaws on the eve of his trespass trial. He avers that the DA's office did so by attempting to strip him of his defense counsel—also a violation of his Sixth Amendment right to counsel and his Fourteenth Amendment right to procedural due process—and threatening to renew prosecution of his trespass charges after they had previously been dismissed or withdrawn—also a violation of his Fourteenth Amendment right to substantive due process.

       Wertz seeks prospective injunctive relief for all three counts of the Complaint: he asks that the Court permanently enjoin DA Ryan and all employees, agents, and officers under her control from taking "further retaliatory action" against Wertz, "further [charging] or prosecuting" Wertz's alleged trespass incident, and "undertaking any other effort to deprive him of criminal defense

1

counsel of choice." (*See* Compl. ¶¶ 86, 90, 95.) Wertz also urges the Court to convert DA Ryan's motion to dismiss into a motion for summary judgment given her purported dependence on "numerous extraneous facts and an exhibit not referenced in the Complaint."

The Court declines to convert DA Ryan's motion because it can decide the issues at hand without considering any extraneous matters introduced by either party. And the Court has determined that it lacks subject matter jurisdiction over this action as the Complaint has failed to state a "case or controversy" affording Wertz the ability to bring this action in federal court. Accordingly, for the reasons that follow, the Court will deny Wertz's motion to convert, grant DA Ryan's motion to dismiss, and dismiss this action with prejudice.

## I. FACTUAL BACKGROUND

On February 22, 2020, Pennsylvania State Police Trooper Isaac Warren advised Wertz that he had been notified that Wertz had improperly entered property owned by Christie and Douglas Mousaw. (Compl. ¶ 9.) On April 1, 2020, Trooper Warren filed a criminal complaint charging Wertz with misdemeanor criminal trespass. (Compl. Ex. A at 2-5.) The complaint alleged that Wertz had previously been ordered by Corporal Jennifer Ruhl "to not step foot on Douglas Mousaw's property," but he had done so again. (*Id.* at 3.)

Trooper Warren appended an Affidavit of Probable Cause to the complaint describing the events of February 22 as follows:

> On 02/22/20 at approximately 1916 hours, assisted by Tpr. Chad BURGWALD, I was dispatched to [the Mousaw's property] for the report of a neighbor trespassing. While responding, I called Douglas MOUSAW, hereafter known as the Victim.
>
> The Victim related that upon checking his residential security cameras, he observed his neighbor, Richard WERTZ [] walk onto his property and move his security camera. The Victim related that he was currently in New York.
>
> Upon viewing the residential security camera video received by email, I observed a male later identified as [Wertz], walk onto the Victim's property and upon

noticing the security camera, he backed behind a bush. The next video showed the camera being tilted up, making the Victim's property not observable.

Upon arriving at [Wertz's] residence, [] I interviewed [Wertz]. When confronted about walking on the Victim's property, [Wertz] related that he was not on his property. Upon being told that there was security footage of him on the Victim's property, he related that he was just walking around.

Upon Speaking to CPL Jennifer RUHL, she advised me that on 02/04/20 she investigated a separate incident . . . and advised [Wertz] that he was not allowed to be on the Victim's property.

I recommend that [Wertz] be ordered forth to answer to the above listed charges.

(*Id.* at 5.)

On May 8, 2020, Wertz was notified of the criminal complaint by the Magisterial District Court. (Compl. ¶ 14.) A preliminary hearing was set for June 30, 2020 and was thereafter postponed until July 7, 2020 and then September 11, 2020. (*Id.* ¶ 16.) On September 11, Wertz's attorney Thomas E. Martin, Jr. was informed that the DA's office would not offer Wertz the opportunity to plead down his charge. (*Id.* ¶ 17.) Wertz's preliminary hearing was again postponed until September 25, 2020. (*Id.* ¶ 18.) At the September 25 hearing, the DA's office was "unprepared to prosecute the case" and it was dismissed. (*Id.* ¶ 19.)

On October 19, 2020, Trooper Warren filed a new criminal complaint against Wertz again charging him with misdemeanor criminal trespass. (Compl. Ex. B. at 7-10.) An Affidavit of Probable Cause containing the same facts as set forth in Trooper Warren's initial affidavit was appended to the complaint. (*Id.* at 10.) A preliminary hearing was held on January 15, 2021, at which Wertz was again represented by Martin. (Compl. ¶ 22.) Wertz filed a motion for writ of habeas corpus challenging his second misdemeanor criminal trespass charge on January 27, 2021. (Compl. Ex. C at 12-13.) Wertz, Martin, and Assistant District Attorney (ADA) Christian P. Hernandez subsequently entered into negotiations regarding Wertz's trespass charge, and ADA

Hernandez ultimately withdrew Wertz's misdemeanor criminal trespass charge and decreased the grading of Wertz's charge to summary trespass. (Compl. ¶¶ 24-27; Compl. Ex. D at 22.) Judge David Bortner of the Chester County Court of Common Pleas, who was presiding over the case, set a summary trial date for April 9, 2021. (Compl. ¶¶ 28-30.)

On April 3, 2021, six days before trial, Martin wrote a letter to the Mousaws' counsel (the "April 3 Letter") appending a document titled "General Mutual Release." (Compl. Ex. E at 26-27; Compl. Ex. F.) The April 3 Letter asserted that the Mousaws "have engaged in a repeated pattern of tortious conduct" toward the Wertz family, including by harassing, defaming, and stalking Wertz, his wife, and his daughter. (Compl. Ex. E at 26-27.) Martin further wrote that "if [the Mousaws] are unwilling before Friday[1] to sign the mutual general release I drafted I shall institute litigation in the Court of Common Pleas of Chester County the following week against them on behalf of my clients, seeking injunctive as well as compensatory relief." (*Id.* at 27.) The "General Mutual Release" document proposed that the Wertzes and the Mousaws execute mutual general releases of all civil claims against each other and agree to not voluntarily testify against each other unless ordered to do so by the court. (Compl. Ex. F.) Christie and Doug Mousaw were set to testify against Wertz during the April 9 trial. (*See* Compl. Ex. I at 54.) The Mousaws rejected Martin's offer. (Compl. ¶ 49.)

On April 7, 2021, ADA Hernandez requested a continuance of the April 9 trial. (*Id.* ¶ 59.) Martin opposed the continuance request, and Judge Bortner denied the request. (*Id.* ¶¶ 60-61.) On April 8, 2021, Wertz filed a civil complaint against Christie and Douglas Mousaw asserting causes

---

[1] "Friday" refers to Friday, April 9, 2021, the scheduled start date of Wertz's trial.

4

of action for assault, interference with economic benefit, and defamation.[2] (Compl. Ex. G at 31-47.) Later on April 8, Martin sent a copy of Wertz's civil complaint to ADA Hernandez. (Compl. Ex. H.)

At some point between April 3 and April 8, ADA Hernandez filed an undated and unsigned motion *in limine* requesting that Judge Bortner enter an order disqualifying Martin (the "Motion to Disqualify"). (Compl. Ex. I at 53-57.) The Motion to Disqualify argued that, in the April 3 Letter, "Mr. Martin used the threat of instituting civil litigation against Mr. Mousaw (victim) unless the victim agreed to withhold testimony, relating to the commission of a crime, from a judge." (*Id.* at 54.) The Motion to Disqualify further asserted that Martin had engaged in "intimidation of [a] witness or victim" and that his "continued representation in this matter is incompatible with fair trial due process requirements." (*Id.*) It stated that Martin's "threats to the victim are potentially criminal, and appear to be violations of the Pennsylvania Rules of Professional Conduct" and "[h]is continued appearance in this case—potentially while undergoing criminal or disciplinary investigation for [his] actions and statements—is inappropriate." (*Id.* at 56.) The Motion to Disqualify was served only on Judge Bortner and was not served on Martin. (*Id.* at 62.)

Judge Bortner informed Martin about the Motion to Disqualify during a telephone conference on April 8. (Compl. ¶ 56.) On the call, Judge Bortner ordered ADA Hernandez to send a copy of the Motion to Disqualify to Martin, and he emailed him one later that day. (*Id.* ¶ 57.)

---

[2] The Complaint also alleges that Wertz filed two unspecified private criminal complaints requesting that criminal charges be filed against the Mousaws, but the Chester County DA's office "failed for more than a month to take action on the complaints, despite spending time and resources prosecuting Wertz." (Compl. ¶ 43.) However, Wertz does not append these complaints to the Complaint as exhibits, nor does he provide a date on which he filed the complaints or whether action was ever taken in connection with them.

5

On April 9, 2021, ADA Hernandez announced in open court that the DA's office had withdrawn the summary trespass charge against Wertz. (*Id.* ¶ 62.) Judge Bortner asked ADA Hernandez whether the DA's office would refile the charge in the future, and ADA Hernandez "demurred, stating that the matter was under 'investigation.'" (*Id.* ¶ 63.) No charge was refiled against Wertz between April 9 and the filing of the Complaint.[3] (*Id.* ¶ 65.)

Wertz filed suit against DA Ryan on May 10, 2021. DA Ryan moved to dismiss the Complaint on May 28, 2021. Wertz filed his opposition on June 10, 2021, and DA Ryan filed a reply on June 21, 2021. Wertz then filed a motion to convert DA Ryan's motion to dismiss into a motion for summary judgment pursuant to Fed. R. Civ. P. 56 on July 2, 2021. DA Ryan opposed the motion on July 13, 2021, and Wertz replied on July 26, 2021.

## II.  STANDARD OF REVIEW

Although DA Ryan never explicitly characterizes her motion to dismiss as one challenging this Court's subject matter jurisdiction, her motion focuses largely on arguing that there is no actual case or controversy before the Court. This is a jurisdictional challenge by nature and will be analyzed accordingly.

A court must dismiss a matter if it lacks subject matter jurisdiction over the complaint. *See* Fed. R. Civ. P. 12(b)(1). In deciding a 12(b)(1) motion, a court must first determine whether the motion presents a "facial" or "factual" challenge to subject matter jurisdiction. *Constitution Party*

---

[3] The Court notes that the Complaint is also littered with several barbs against the Mousaw family, such as that Christie Mousaw called Corporal Ruhl to Wertz's property in retaliation for him posting disparaging reviews about her medical practice on the internet, and that Douglas Mousaw called Immaculata University to inform them about Wertz's February 22 arrest in order to jeopardize his position in its Doctor of Psychology program. (*See* Compl. ¶¶ 7, 13.) These gratuitous shots at the Mousaws are irrelevant to the Court's analysis of Wertz's accusations levied at the DA's office.

*of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). A facial challenge concerns a purported pleading deficiency, "whereas a factual [challenge] concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *Id.* at 358 (quoting *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008)). In reviewing a facial challenge, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *In re Schering Plough Corp.*, 678 F.3d 235, 243 (3d Cir. 2012) (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). Thus, a facial challenge calls for the court to apply the same standard of review it would use in considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Constitution Party of Pa.*, 757 F.3d at 357.

### III. DISCUSSION

#### A. Motion to Convert

Wertz invites the Court to convert DA Ryan's motion to dismiss into a motion for summary judgment. He reasons that DA Ryan "has used briefing thereon to introduce numerous extraneous facts and an exhibit not referenced in the Complaint" and "the District Attorney's arguments for dismissal rely heavily on these same facts and exhibit," warranting conversion. (Pl.'s Mot. to Convert Def.'s Mot. to Dismiss to Rule 56 Mot. for Summ. J. [Pl.'s Mot. to Convert] at 3.)

Although the Court will decide DA Ryan's motion on 12(b)(1) grounds, and Wertz moves to convert DA Ryan's motion as it is stylized—as a 12(b)(6) motion—the Court nevertheless addresses Wertz's motion for the sake of completeness. Under Fed. R. Civ. P. 12(b), a 12(b)(6) motion can be converted into a motion for summary judgment if the court considers matters outside of the complaint in deciding the motion. Simply attaching exhibits to a complaint does not necessarily make that complaint amenable only to summary judgment or foreclose a court from considering those exhibits in its ruling. *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548,

559-60 (3d Cir. 2002). The decision regarding whether to make this conversion is within the discretion of this Court. *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 (1990)).

The Court declines to convert DA Ryan's motion. The Court acknowledges that both parties—not just DA Ryan—have introduced matters extraneous to the Complaint in their motion to dismiss papers. Nevertheless, the Court neither considered nor relied upon these matters in arriving at its ruling on DA Ryan's motion to dismiss. DA Ryan's motion therefore need not be converted into a motion for summary judgment.

Perhaps recognizing that DA Ryan's motion is, in substance, a challenge to this Court's subject matter jurisdiction, Wertz requests that, in the alternative, the Court "construe" DA Ryan's motion to dismiss "as a 'factual challenge' to this Court's jurisdiction under Fed. R. Civ. P. 12(b)(1)." (Pl.'s Mot. to Convert at 3.) But, as DA Ryan points out, to the extent she challenges this Court's subject matter jurisdiction, she asserts a facial challenge because her motion argues that the Complaint fails to assert a case or controversy on its face. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). Moreover, neither party cites to any extraneous matters in connection with their arguments pertaining to DA Ryan's case or controversy defense. "A factual attack requires a factual dispute, and there is none here." *Constitution Party of Pa.*, 757 F.3d at 358. As such, the Court finds DA Ryan's motion to dismiss to be a facial challenge to the Court's subject matter jurisdiction and declines to "construe" it any differently.

**B.  Subject Matter Jurisdiction**

Article III of the Constitution requires that a plaintiff seeking to invoke the jurisdiction of the federal courts allege an actual "case or controversy." U.S. Const. art. III, § 2. The "case or controversy" requirement in turn demands that a plaintiff seeking injunctive relief allege that he

8

"has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983). He must allege more than an "abstract injury": "the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *Id.*; *see also O'Shea v. Littleton*, 414 U.S. 488, 502 (1974) ("[T]he basic requisites of the issuance of equitable relief" include "the likelihood of substantial and immediate irreparable injury.")

Critically, "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." *Lundy v. Hochberg*, 91 F. App'x 739, 743 (3d Cir. 2003) (quoting *Lyons*, 461 U.S. at 103). Instead, a plaintiff "must establish a real and immediate threat that he would again be the victim of the allegedly unconstitutional practice." *Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987) (quoting *Lyons*, 461 U.S. at 105) (quotation marks and brackets omitted). This future injury must be "certainly impending," not one that will only occur at "some indefinite future time." *Pa. Prison Soc'y v. Cortes*, 622 F.3d 215, 228 (3d Cir. 2010) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 n.2 (1992)).

Here, the Court finds that Wertz has failed to sufficiently allege that he has suffered an injury warranting prospective relief. The Complaint does not allege that Wertz's past encounters with the DA's office portend a future encounter that will give rise to the same, allegedly unconstitutional conduct he claims was perpetrated against him in the past. Its allegations are purely hypothetical and speculative.

Injunctive relief is an extraordinary remedy that should only be granted in limited circumstances. *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426-27 (3d Cir. 1994). And the relief that Wertz requests is certainly extraordinary. He first asks that the Court permanently enjoin the DA's office from "taking further retaliatory action against [him] for

exercise of his First Amendment rights to petition government and to speech by attempting to adjust his civil causes of action and pursuing the same in litigation." (Compl. ¶ 86.) Wertz maintains that the initial "retaliatory action" forming the basis of this request came via ADA Hernandez "attempting to strip him of criminal defense counsel through the filing of the baseless Secret Motion to Disqualify and by threatening renewed prosecution of trespass charges against him after such charges had already been dismissed or withdrawn three times" after Martin informed the Mousaws of Wertz's intent to file a civil lawsuit against them in the April 3 Letter and he actually did so on April 8. (*Id.* ¶ 84.) He asserts that these actions generated "fear[] [of] further retaliation by the Chester County DA if he should continue to prosecute his Civil Suit in court . . ." (*Id.* ¶ 86.)

Wertz also requests that the Court permanently enjoin the DA's office from "further [charging] or prosecuting Wertz for the alleged trespass incident on February 22, 2020" because the DA's office engaged in "harassing . . . actions" in violation of Wertz's Fourteenth Amendment right to substantive due process and further prosecution would result in "a perversion of the prosecutorial function and manifest miscarriage of Pennsylvania's criminal justice system." (*Id.* ¶¶ 88-90.) Finally, Wertz requests that the Court permanently enjoin the DA's office "from again attempting through the filing of any *ex parte* motion or undertaking any other effort to deprive him of criminal defense counsel of his choice without prior notice and opportunity to be heard" because the Motion to Disqualify "was an attempt repugnant to the Constitution of the United States to secretly deny Wertz his Sixth Amendment right to counsel of his choice and Fourteenth Amendment right to procedural due process." (*Id.* ¶¶ 93-95.)

However, the Complaint contains no allegations evincing that Wertz faces a threat of a real, immediate, or impending injury from the DA's office justifying injunctive relief. First, Wertz

10

provides no evidence that the DA's office intends to interfere in his civil suit against the Mousaws, or that it has already interfered. In fact, the publicly available docket for the civil suit shows that the case remains active, with deposition notices, answers, counterclaims, and replies all filed in recent months, and a Trial Reminder Letter sent in October 2021. (*See Wertz v. Mousaw*, Civ. A. No. 2021-02280-TT (Pa. Commw. Ct. 2021).) Moreover, the DA's office is not a party to that suit, and Wertz fails to articulate how exactly the DA's office could actually impede the suit even if it sought to do so.

Additionally, ADA Hernandez's April 9 statements do not convince this Court that Wertz will again be the victim of an allegedly unconstitutional practice in connection with the possible refiling of trespass charges against him. Drawn verbatim from the Complaint, Wertz alleges that ADA Hernandez addressed refiling a trespass charge as follows:

> When pressed by the Trial Judge whether the Commonwealth would seek to refile the charge in the future, Hernandez demurred, stating that the matter was under "investigation." The Chester County DA through Hernandez further specifically refused to disavow the filing of a *fourth* trespass charge against Wertz for the same alleged February 22, 2020 incident . . . . [T]he Chester County DA[] express[ly] refus[ed] to rule out refiling charges against Wertz on the same incident of alleged trespass on February 22, 2020 . . . .

(Compl. ¶¶ 63-64, 69.) (emphasis in original)

So, as stated by Wertz in the Complaint, ADA Hernandez merely "demurred" answering definitively as to whether the DA's office would refile charges and "refus[ed]" to rule out possibly doing so in the future. (*Id.*) Despite Wertz's protests to the contrary, this conduct is not threatening whatsoever. It does not foretell any constitutionally violative conduct on the part of ADA Hernandez, DA Ryan, or any of their colleagues. Wertz even points out in the Complaint that no charge had been filed between April 9 and the date on which he filed his Complaint. And indeed, the Court does not know of any further trespass charges that have been filed against Wertz to this

day, more than nine months after ADA Hernandez withdrew the summary trespass charge and nearly two years after Trooper Warren filed the first criminal complaint.

Even if ADA Hernandez's conduct generated "fear" in Wertz, this is not enough to manufacture a real and immediate threat of injury. It is well-established that a plaintiff's "fear" of possible future events does not establish a case or controversy. "'[S]ubjective apprehensions' cannot control the determination as to whether the future harm that [a plaintiff] fears is 'actual or imminent' rather than 'conjectural or hypothetical.'" *Burns v. Alexander*, 776 F. Supp. 2d 57, 76-77 (W.D. Pa. 2011); *see also Lyons*, 461 U.S. 95, 103 n.8 ("The emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant."); *Microsoft Corp. v. SynKloud Techs., LLC*, 484 F. Supp. 3d 171, 178 (D. Del. 2020) (citing *Lyons*, 461 U.S. at 111) ("[A] fear of future harm that is only subjective is not an injury or threat of injury caused by the defendant that can be the basis of an Article III case or controversy."); *D'Onofrio v. Borough of Seaside Park*, Civ. A. No. 09-6220, 2012 WL 194618, at *4 (D.N.J. Jan. 23, 2012) ("Plaintiff's fear that future enforcement actions will be instituted against him is purely conjectural in this case as no specific threat is alleged. Therefore, injunctive relief against future enforcement actions would be improper at this time."); *Derstine v. W. Rockhill Twp.*, Civ. A. No. 92-5553, 1993 WL 74840, at *1 (E.D. Pa. Mar. 15, 1993) (citing *Lyons*, 461 U.S. at 101-03) ("Plaintiff's proposed amendment [to the complaint] contains only speculative fears and concerns, averring that 'defendants remain in the position to interfere with plaintiff's civil rights as alleged herein.'"). Here, Wertz's averment that ADA Hernandez's refusal to rule out refiling trespass charges placed him "in continuing reasonable fear of retaliatory harassment" is insufficient to demonstrate an imminent injury. (Compl. ¶ 69; *see also id.* ¶¶ 66-67, 80, 86.)

Wertz also repeatedly attempts to characterize the charges brought in connection with his alleged trespass as both baseless and grounded in spite because they were "thrice dismissed or withdrawn" without a conviction. (*See, e.g.*, *id.* ¶¶ 67, 79-80, 89.) He urges the Court to view this reservoir of charges as proof that Wertz faces impending retaliatory action or due process deprivations on the part of the DA's office. But this is a mischaracterization. The Court does not view the DA office's decision to bring either the first or second misdemeanor trespass charges as harassing or rooted in bad faith based on the allegations in the Complaint. And one "withdrawal" came as a result of Martin and ADA Hernandez negotiating down Wertz's charge. Moreover, to the extent Wertz asks the Court to determine that he faces a threat of future prosecution based on the outcomes—and sheer volume—of his other past incidents with the Mousaws beyond his alleged trespass, the Court declines to do so.[4]

---

[4] The Complaint also includes descriptions of other incidents involving the Mousaws that resulted in criminal charges against Wertz. On September 30, 2019 Wertz was charged with a traffic violation after, allegedly, a collision occurred between an automobile operated by Wertz and an automobile operated by Christie Mousaw. (Compl. ¶ 31.) Wertz was acquitted of this charge on January 7, 2020 following trial. (*Id.* ¶ 33.) On January 13, 2021, Wertz was charged with harassing Christie Mousaw. (*Id.* ¶ 34.) He was also acquitted of this charge on April 15, 2021 following trial. (*Id.* ¶ 36.)

The Court is puzzled as to why allegations involving Wertz's acquittals were included in the Complaint. He may have included them to support his belief that because he has been prosecuted by the DA's office before, even on unrelated charges, it means that he will be prosecuted by the DA's office again. (*See id.* ¶ 80 (alleging that the DA's office attempted to violate Wertz's constitutional rights "[i]n view of [its] failure to secure a conviction against Wertz despite five prosecutorial efforts directed against him").) Or perhaps Wertz included them to support his belief that because he was acquitted in the past, all charges brought against him in connection with the Mousaws are meritless. (*See id.* ¶ 37 (alleging that Wertz's acquittals "reflected the reality of the situation as Wertz contended it to be: Christie Mousaw had never been a victim of any wrongdoing by him.").) Indeed, later in the Complaint, Wertz collects *all* charges against him in one paragraph, including those involving his alleged trespass, boasting that they have (thus far) resulted in two acquittals, two withdrawals, one dismissal, and no convictions. (*Id.* ¶ 79; *see also id.* ¶ 64 (labelling a future refiled trespass charge as "the sixth charge against Wertz in total alleging wrongdoing against one or both Mousaws").) But this list attempts to create a smokescreen over reality: namely, that Wertz's traffic and harassment cases have absolutely no bearing on the DA office's prosecution of Wertz regarding his alleged trespass, let alone the matter

The Court also does not find that ADA Hernandez's filing of the Motion to Disqualify indicates that Wertz has been injured or faces impending injury. Wertz is in essence asking the Court to ignore that the Motion to Disqualify was a motion *in limine*, a routine court filing, after ADA Hernandez's witnesses received a settlement proposal that, in ADA Hernandez's and ADA Hernandez's opinion alone, overstepped its bounds. It was then in the hands of Judge Bortner to make a ruling on that motion. Wertz has not alleged that Judge Bortner or the other capable jurists at the Chester County Court of Common Pleas are unable to determine the propriety of this or any other motions involving Wertz's counsel, if any more are ever filed (and none have been, as far as this Court knows). In fact, speaking to Judge Bortner's capabilities, the deficiency of the Motion to Disqualify that Wertz most fervently and frequently highlights—that it was not served on Martin—was eradicated by the Judge when he revealed its existence during the April 8 conference call with Martin and ADA Hernandez and demanded it be sent to Martin. (*See id.* ¶ 56.)

What is more, the Motion to Disqualify was never even ruled on, and Martin never was disqualified as Wertz's attorney, as the entire case was withdrawn on April 9. Nor were any witness intimidation charges ever filed against Martin. Nor has Wertz alleged that he would be unable to seek relief in state court if charges were ever filed in connection with the April 3 Letter, or trespass charges ever refiled. Like his allegations regarding the possible refiling of his trespass charges, Wertz's allegations regarding the Motion to Disqualify are wholly hypothetical and rooted in fear,

---

before this Court. Moreover, Wertz's trespass charge was never decided on the merits, and the Court is not aware of any pending trespass charges against him now. It is as if Wertz is insisting that a roulette wheel that landed on "red" the previous five turns—even though he actually played blackjack and craps for the first two games, the other three "victories" were declared before the game was even played, and the table is now closed—will land on "red" once again before this Court. *See O'Shea*, 414 U.S. at 495-96 ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects.").

and do not demonstrate that he faces actual, imminent future harm. (*See id.* ¶ 66 ("The Chester County DA's attempt to strip Wertz of his defense counsel . . . places Wertz in reasonable fear of further retaliatory acts by the Chester County DA if he should now continue to prosecute his Civil Suit."); *see also id.* ¶¶ 67, 80.)

Wertz has therefore failed to establish a case or controversy between him and DA Ryan. Moreover, the Court finds that any amendment to the Complaint would be futile given the speculative nature of Wertz's claims and the scope of the relief sought. *See Shaika v. Gnaden Huetten Mem'l Hosp.*, Civ. A. No. 15-0294, 2015 WL 4092390, at *7 (M.D. Pa. July 7, 2015); *Doe v. Div. of Youth & Fam. Servs.*, 148 F. Supp. 2d 462, 478 (D.N.J. 2001). This case is therefore dismissed with prejudice.

## IV. CONCLUSION

Because no case or controversy exists between Wertz and DA Ryan justifying the issuance of prospective relief, the Court is without jurisdiction to entertain Wertz's claims. Accordingly, DA Ryan's motion to dismiss is granted and the case dismissed with prejudice. Wertz's motion to convert is also denied. An Order consistent with this Memorandum will be docketed separately.